## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiffs, | |
| v. | Criminal Action No. 23-04-GBW |
| CURTIS COOPER, | |
| Defendant. | |

---

Michael F. McTaggart, U.S. ATTORNEY'S OFFICE, Wilmington, Delaware.

*Counsel for Plaintiff*

Eleni Kousoulis, Janet Bateman, PUBLIC FEDERAL DEFENDER'S OFFICE, Wilmington, Delaware.

*Counsel for Defendant*

## MEMORANDUM OPINION

March 7, 2024
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Presently before this Court is Defendant Curtis Cooper's Motion to Suppress evidence seized by Wilmington Police Department ("WPD")—and statements made by Defendant in police custody—following a warranted search of Room 404 of the Riverview Motel on October 5, 2022 (the "Motion"). D.I. 24. The Government opposes the Motion and contends that officers obtained and abided by a valid search warrant. D.I. 27. Having reviewed the Motion and all relevant briefing, the Court finds that the search was conducted pursuant to a valid search warrant supported by sufficient probable cause. Accordingly, Defendant's Motion to Suppress is DENIED.

## I.   BACKGROUND[1]

In late September 2022, Wilmington Police Department Detective James Coffiey received a tip from a "past proven" reliable informant (the "Informant") that an individual known by the nickname "Curt" was selling drugs in the area of E. 9th and Kirkwood Streets in Wilmington. Affidavit, ¶ 9A. The Informant noted that "Curt" was on the run from probation and was living with his girlfriend at the Riverview Motel. *Id.* The Informant also noted that he witnessed "Curt" brandishing a weapon on more than one occasion. *Id.*

Detective Coffiey believed that the "Curt" identified by the Informant was likely Defendant Curtis Cooper, who had several prior felony drug convictions and was currently on probation. *Id.* at ¶ 9B. Detective Coffiey's suspicions were confirmed when the Informant made a positive

---

[1] For the purposes of this Motion, the Court will accept as true the facts as outlined in the Search Warrant Affidavit submitted to the Magistrate Judge on October 5, 2022. D.I. 27-1 ("Affidavit").

identification of Defendant from a picture line-up. *Id.* The Informant also identified Renaesha Ellington as Defendant's girlfriend from a line-up of several women. *Id.* at ¶¶ 9B-C.

Following the Informant's positive identification, officers contacted the staff of the Riverview Motel and learned that Ellington was renting Room 404. *Id.* at ¶ 9D. On October 5, 2022, Detective Coffiey established surveillance of the Riverview Motel alongside the WPD's Drug and Organized Crime Vice Unit. *Id.* at ¶ 9E. During their surveillance, officers witnessed Defendant entering and exiting the motel several times until, on or around 9:00 am, officers observed Defendant entering the passenger side of an Uber vehicle. *Id.* Officers conducted a car stop and took Cooper into custody. *Id.* at ¶¶ 9E-F. At the time of his arrest, Defendant was found in possession of 11 bundles of heroin and one loose baggy containing crack cocaine, each of which was branded with "Butt naked" and/or "7UP." *Id.* Detective Coffiey informed Defendant of his Miranda rights and asked where Defendant was coming from. *Id.* at ¶ 9G. Defendant admitted that he was coming from the Riverview Motel and alleged that he and Ellington had been moved from Room 404 to Room 400 due to renovations at the motel. *Id.* Officers confirmed with the motel shortly thereafter that no renovations were underway, and that Ellington was in fact still renting Room 404. *Id.* at ¶ 9H.

Accordingly, Detective Coffiey submitted the Affidavit in support of WPD's request for a search warrant to search Room 404 of the Riverview Motel for drug evidence and/or handguns. Affidavit at 1-2. Magistrate Judge Mary Ellen Naugle (hereinafter, the "Magistrate Judge") approved the search warrant on October 5, 2022, and officers conducted a search of Room 404 shortly thereafter. D.I. 27 at 4. During their search, officers found a 9 mm handgun, 2.366 grams of heroin, and 1 gram of marijuana. *Id.*

3

Defendant now moves to suppress the evidence found by officers during the search of Room 404 on grounds that the search warrant should not have issued. D.I. 24. For the same reason, Defendant moves the Court to suppress any subsequent statements made by Defendant to law enforcement following their search of Room 404.

## II.   LEGAL STANDARD

The threshold requirement for issuance of a warrant is probable cause. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Probable cause is a "fluid concept" that "turn[s] on the assessment of probabilities in particular factual contexts." *States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (quoting *Gates*, 462 U.S. at 232). Prior to issuing a search warrant, a magistrate judge must "make a practical common-sense decision whether, given all the circumstances set forth in the affidavit … there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Gates*, 462 U.S. at 238). While, ideally, every affidavit provided to a magistrate judge would cite direct evidence linking the alleged crime to the place being searched, such evidence is rarely available. Thus, magistrate judges often must infer probable cause from "the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence]." *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993) (citation and quotation omitted).

When a warrant is issued and later challenged, "a deferential standard of review is applied in determining whether the magistrate [judge's] probable cause decision was erroneous." *United States v. Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents*, 307 F.3d 137, 146 (3d Cir.2002); *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir.2001). In reviewing a magistrate's decision to issue a search warrant, this Court must exercise great

4

deference. *Gates*, 462 U.S. at 236. However, the Court will not "simply rubber stamp a magistrate [judge's] conclusion." *United States v. Mortimer*, No. 03–4174, 387 Fed.Appx. 138, 140, 2005 WL 318650 at *1 (3d Cir. Feb. 10, 2005) (quoting *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir.1983)). Rather, the Court must determine whether "the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238; *Jones*, 994 F.2d at 1057 ("[O]ur role is not to make our own assessment as to whether probable cause existed. Rather, we are constrained to determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made.").

In so doing, the Court must confine itself to the affidavit and cannot consider other portions of the record. *Hodge*, 246 F.3d at 305. If a sufficient basis is found to exist, the Court will uphold the Magistrate Judge's decision even if a "different magistrate judge might have found the affidavit insufficient to support a warrant." *Stearn*, 597 F.3d at 554. Finally, when resolving even questionable cases, the deference given warrants should prevail. *Gates*, 462 U.S. at 237 n. 10.

## III.  DISCUSSION

Defendant asks the Court to suppress evidence seized from Room 404 of the Riverview Motel, and any subsequent statements to law enforcement, on the grounds that the search was not supported by probable cause. Specifically, Defendant contends that the Affidavit "contain[ed] no specific evidence regarding the reliability of the informant" and "suggest[ed] no reason to believe contraband would be found in the Room 404." Thus, Defendant argues that the Magistrate Judge did not have a sufficient basis to execute a search warrant. For the following reasons, Defendant's motion is denied.

*a.   The Informant's Statements Did Not Lack Sufficient "Indica of Reliability."*

A magistrate judge may issue a warrant that relies in whole or in part on the statements of

a confidential informant if "the totality of the circumstances gives rise to probable cause." *Stearn*,

597 F.3d at 555.   Courts often consider the "veracity" and "reliability" of the informant's

statements; however, veracity and reliability are not to be "understood as entirely separate and

independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230.  Rather, "a

deficiency in one [element] may be compensated for, in determining the overall reliability of a tip,

by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233.   For

instance, where veracity, meaning the basis of the informant's knowledge, is unclear, reliability

can be bolstered if police corroborate "details of an informant's tip." *Id.* at 241.

The Court finds that the Informant was reliable and that officers presented the Magistrate

Judge with sufficient corroborating evidence.   The Affidavit noted, for instance, that the Informant

had been reliable in several prior narcotics investigations.   Affidavit, ¶ 9A.   While the Affidavit

provided no specific evidence regarding the Informant's identity or the extent of the Informant's

prior tips, the Court finds that the details of the Informant's tip, many of which officers were able

to corroborate, indicated that the Informant was a credible source.

According to the Affidavit, officers learned from the Informant that Defendant "was selling

drugs on a daily basis in the area of 9th and Kirkwood Streets." *Id.*   The Informant also revealed

that he saw the Defendant with a handgun on several occasions. *Id.*   While the Informant did not

disclose to officers how he knew that Defendant was dealing drugs, the Informant asserted several

other claims that were later corroborated by officers.   The Informant revealed, for instance, that

Defendant lived at the Riverview Motel with his girlfriend, Renaesha Ellington. *Id.*   Police

corroborated the Informant's claim that Ellington was Defendant's girlfriend by referencing

multiple prior domestic charges against Defendant that involved a party named Renaesha Ellington. *Id.* Officers contacted the Riverview Motel and confirmed that Ellington was in fact renting Room 404. *Id.* at ¶ 9D. Officers patrolled the Riverview Motel and saw Defendant "enter and exit" the Riverview Motel, implying that Defendant was living there. *Id.* at ¶ 9E. Further, when shown a lineup, the Informant was able to identify both Defendant and his girlfriend, Renaesha Ellington. *Id.* at ¶¶ 9B-C.

The Informant also informed officers that Defendant was on the run for violations of his probation. *Id.* at ¶ 9A. Officers corroborated the Informant's tip by conducting a DELJIS check on Defendant, which found that Defendant was "actively wanted on two capiases related to charges of Violation of Probation." *Id.* at ¶ 9B.

Given that officers were able to corroborate key aspects of the Informant's claims, the Court finds that it was reasonable for officers and the Magistrate Judge to conclude that the informant was a reliable source.

> b. *There is Sufficient Evidence of a Nexus Between the Location of the Search and the Alleged Crimes.*

Before issuing a search warrant, a magistrate judge must find a "nexus" between the evidence sought and the place to be searched. *Stearn*, 597 F.3d at 558. In other words, officers must convince the magistrate judge that there is a fair probability that evidence of a crime will be found in the identified location. *Id.* When seeking a search warrant for the premises of a suspected drug trafficker, "direct evidence linking the residence to criminal activity is not required to establish probable cause." *United States v. Burton*, 288 F.3d 91, 103 (3d Cir.2002). Instead, there must be sufficient evidence to support a "reasonable inference ... that drug dealers often store evidence of drug crimes in their residences." *Id.* at 104. To find that a reasonable inference can

7

be drawn, we require evidence that "(1) ... [the] person suspected of drug dealing is actually a drug dealer; (2) ... [the] place to be searched is possessed by, or the domicile of, the dealer; and (3) ... [the] home contains contraband linking it to the dealer's drug activities." *Id.*

The Court finds that the Affidavit set forth sufficient evidence to establish a nexus between Defendant's criminal conduct and Room 404 of the Riverview Motel. First, there was sufficient evidence that Defendant was engaged in drug-related activities. As noted above, officers learned from a reliable informant that Defendant was actively dealing drugs. After officers corroborated many of the informant's claims, officers arrested Defendant after watching him leave the Riverview Motel and recovered over 144 bags of controlled substances in Defendant's possession. *Id.* at ¶¶ 9E-F. While Defendant argues that the drugs were for personal use, D.I. 24 at 8, each bag was stamped "Butt naked" and "7UP," implying that they were packaged for sale and distribution. Affidavit ¶ 9F. Further, the Affidavit noted that Defendant had a history of drug dealing convictions, including four prior felony drug convictions. *Id.* at ¶ 9B. Taken as a whole, this evidence created a reasonable basis for officers and the Magistrate Judge to infer that Defendant was dealing drugs around the time of the Search Warrant's execution.

Second, officers provided sufficient evidence that the place to be searched was possessed by, or the domicile of, Defendant. Prior to Defendant's arrest, officers confirmed with the Riverview Motel that Ellington was renting a room there. Defendant argues that the Government presented no evidence linking Room 404 in particular to Defendant. D.I. 24 at 12. The Court disagrees. At the time of his arrest, Defendant admitted to officers that he was living at the Riverview Motel with Ellington. Affidavit ¶ 9G. While Defendant stated that he and Ellington were renting Room 400, when confronted about Room 404, Defendant admitted that he was staying in Room 404 but alleged that the room was being renovated, so he and Ellington were

moved to Room 400. *Id.* Critically, before seeking the warrant, officers asked motel staff to confirm whether Ellington's room had changed due to renovations, and the Riverview Motel informed officers that no renovations were being made and that Ellington was staying in Room 404. *Id.* at ¶ 9H. Defendant's admission to living with Ellington at the Riverview Motel coupled with the motel's confirmation that Room 404 was the only room rented by Ellington gave officers and the Magistrate Judge sufficient evidence to conclude that Room 404 was in fact Defendant's domicile.

Third, the Court agrees with the Government that the Magistrate Judge was provided sufficient evidence that Room 404 would contain contraband linked to Defendant's drug activities. As noted above, officers learned from a trusted informant that Defendant was selling drugs in the area of 9th and Kirkwood in the City of Wilmington. While the Riverview Motel was in a neighboring city, officers witnessed Defendant leaving the Riverview Motel in an Uber that was heading in the direction of Wilmington on the day of his arrest. *Id.* at ¶ 9E. Because drugs were found on Defendant when officers stopped the Uber, the Government argues that finding drugs in his possession "ma[de] it more likely that drugs [would] be found in his home." D.I. 27 at 10 (citing *Hodge*, 246 F.3d at 307). The Court agrees.

As the Third Circuit noted in *Hodge*, "[i]t is reasonable to infer that a person involved in drug dealing on such a scale would store evidence of that dealing at his home." 246 F.3d at 306. This inference is further supported by Defendant's history of dealing narcotics. Our Courts have recognized that a "repeat drug dealer certainly has 'the opportunity to conceal [drug-related evidence] in his home' and "'logically could conclude that his residence is the best, and probably the only, location to store items such as records of illicit activity, phone books, address books, large amounts of cash, assets purchased with proceeds of drug transactions, guns to protect drugs

and cash, and large quantities of drugs to be sold.'" *Id.* (internal citations omitted).  Detective Coffiey, relying on his six years of experience investigating drug-related offenses, noted the same, recognizing that "drug traffickers only transport enough drugs that they will need for the sale. They will maintain the other drugs at a secured location, including but not limited to their residence." Affidavit ¶ 10H.  Finally, the informant admitted to seeing Defendant with a firearm on numerous occasions. *Id.* at ¶ 9A.  As no weapon was found in his possession at the time of his arrest, officers had reason to believe that a firearm would be found in Defendant's motel room.

Examining the totality of the circumstances here, the Court finds a sufficient nexus between the search of the motel room and Defendant's alleged criminal conduct.

### c. *Alternatively, the Good Faith Exception Applies.*

Even if the Court were to find that the warrant was not supported by probable cause, the Court agrees with the Government that Defendant's challenge to the search warrant fails under the good faith exception of the exclusionary rule. D.I. 27 at 6-7.  "The good faith exception instructs that suppression of evidence 'is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority,'" even where no probable cause to search exists. *Hodge*, 246 F.3d at 307 (quoting *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993)).  Under the good faith exception, suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." *Williams*, 3 F.3d at 74.  "The test for whether the good faith exception applies is 'whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate [ judge's] authorization.'" *United States v. Loy*, 191 F.3d 360, 367 (3d Cir. 1999) (quoting *United States v. Leon*, 468 U.S. 897, at 922 n. 23, 104 S.Ct. 3405).  Typically, the "mere existence of a warrant [] suffices to prove

10

that an officer conducted a search in good faith and justifies application of the good faith exception." *Hodge*, 246 F.3d at 307–08.

Our Courts recognize four "narrow circumstances" where the good faith exception does not apply. *Stearn*, 597 F.3d at 561 n. 19.   Defendant argues that one is relevant here, namely that the search warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923.   According to Defendant, the affidavit was so deficient that the officers executing the warrant should have known that their search was illegal notwithstanding the Magistrate Judge's approval. D.I. 24 at 16; *See Loy*, 191 F.3d at 367. As the Government notes, the "threshold for establishing this exception is a high one," and Defendant has not met this burden.  D.I. 27 at 7; *see also Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012).

As the Court found above, the Magistrate Judge was presented with sufficient probable cause.   In particular, the Affidavit highlighted that "the police received reliable information that the defendant Cooper dealt drugs, confirmed that information along with confirming the defendant's residence, knew that the defendant was a convicted drug offender, surveilled the defendant's residence, actually arrested the defendant with drugs on his person, and executed the search warrant at his residence on the same date." D.I. 27 at 13.  Thus, the Court disagrees with Defendant that the affidavit was a "bare bones" document that lacked any "indica of reliability." D.I. 24 at 16.

Further, the Court cannot find a lack of good faith merely because the Affidavit was written by Detective Coffiey—who also participated in the execution of the search.   "[T]he good faith exception requires objectively, not subjectively, reasonable conduct." *Hodge*, 246 F.3d at 309.

11

An objective view of Detective Coffiey's conduct does not show that his reliance on the search warrant was "entirely unreasonable." In fact, unlike *U.S. v. Zimmerman*, where the Third Circuit found no good faith because officers submitted an affidavit six months after finding one incriminating video on defendant's laptop,[2] Detective Coffiey executed the Affidavit and search of Room 404 in this matter immediately following Defendant's arrest. D.I. 27 at 13. The Third Circuit in *U.S. v. Zimmerman* also noted that the affidavit attempted to "portray [the defendant] in the worst possible light by referencing misdeeds" that "had noting to do" with the contraband officers sought in the search warrant. *Zimmerman*, 277 F.3d at 437. Here, however, Detective Coffiey submitted an Affidavit which contained information regarding Defendant's alleged drug sales and possession of a firearm and directly supported the warrant that Detective Coffiey sought and obtained to search Room 404 for drugs and weapons. Thus, the Court finds that any reasonably well-trained officer would assume that the warrant was properly issued and valid. Accordingly, the Court finds that, at the very least, the good faith exception bars Defendant's Motion to Suppress.

> ### d. *Officers Properly Obtained Custodial Statements from Defendant Following Their Search of Room 404.*

The Court finds, as the Government maintains, that the search of Room 404 was a proper search conducted pursuant to a valid search warrant. D.I. 27 at 14. Accordingly, any statements obtained by police after are not fruit of an illegal search. Therefore, Defendant's motion to suppress those statements is denied.

---

[2] *Zimmerman*, 277 F.3d at 437.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is DENIED.  The Court will issue an Order consistent with this Memorandum Opinion.